ALFRED G. BELDEN, Plaintiff, *v.* THE UNION WAREHOUSE COMPANY, Defendant.

WILLIAM W. GOODRICH, as Receiver of THE UNION WAREHOUSE COMPANY, Appellant; BROOKLYN WHARF AND WAREHOUSE COMPANY, Respondent.

*Rent of a warehouse — at a percentage of net earnings, the surplus or shortage to be made up or received by the lessor — the covenant runs with the land.*

Where the lease of a warehouse by its terms provides that the rent shall be seven per cent of the net earnings of the business of the lessee, and contains the further stipulation that the loss or gain resulting from the surplus or shortage which shall occur in the operation of the warehouse shall fall upon or inure to the benefit of the lessor, the covenant to pay any shortage runs with the land; and a purchaser from a receiver of the lessor may offset against rent of the warehouse, accrued before the purchase and claimed by the receiver, a shortage in grain supposed to be in store in the warehouse at the time when the purchaser acquired the lease, but subsequently found to be wanting.

APPEAL by William W. Goodrich, as receiver of the Union Warehouse Company, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 9th day of July, 1895, denying his application to compel the Brooklyn Wharf and Warehouse Company, a purchaser on the receiver's sale, to pay the remainder of the purchase money.

*John A. Deady,* for the appellant.

*John M. Bowers,* for the respondent.

CULLEN, J.:

In this action the appellant was appointed receiver of the defendant, a corporation which was, or had been, in the business of storing

and elevating grain. The defendant held under leases various ware-houses in the city of Brooklyn, and adjacent pieces of pier or wharf property. Among these was the property known as "Watson Stores." In July, 1893, it sublet this property to the Atlantic Storage Company for the term of four years from May 1, 1893. The rent stipulated in the lease was seven per cent of the net earnings of the lessee corporation. The demised premises were taken by the lessee with grain stored in them, the lessee assuming the contracts of the storage made by the lessor. The lessee agreed to take the amount of grain shown on the books of the lessor as the true quantity in store. The lessor agreed to pay for any shortage in quantity either in the grain on store at the time of the lease or in grain subsequently stored during the demised term. The provisions of the lease in these respects are as follows:

"It is further mutually covenanted and agreed between the parties of the first and second parts that the quantity of grain in store on the demised premises, upon the execution of this lease, shall be taken at the amount shown by the books of the party of the first part, and that on the last day of the term, or other sooner termination of this lease, as herein provided, the quantity of grain then in store shall be taken at the amount then shown to be in store by the books of the party of the second part.

"The party of the first part covenants and agrees to and with the party of the second part, to bear and pay to the party of the second part all shortages that may occur or arise in the quantity of grain in the premises hereby demised, either at the time of the execution of this lease or in that placed upon or stored in said demised premises by the party of the second part during the continuance of the term hereby demised; and the party of the second part agrees to pay to the party of the first part any and all overruns in the quantity of grain stored in the demised premises at the time of the execution of this lease, or in the quantity of grain that may be placed upon or stored in the demised premises during the continuance of the term, such allowance or payment for shortage or overrun to be made and paid within ten days after the same shall have been determined, and shall apply only to the shortage or overrun ascertained during the term of this lease."

By authority of the court the receiver entered into an agreement with the Brooklyn Wharf and Warehouse Company, whereby he assigned to said company all the leases held by the defendant company and subleases executed by it, all claims for accruing rent for storage, labor and wharfage for their full value (except a deduction on claims for labor). A statement of the rentals and charges was to be prepared by the receiver, and the true value ascertained and determined by him, and by one Dows, who was to act on the part of the purchaser. The sum of $100,000 was paid the receiver on delivery of the assignment. When the true amount of the charges should be ascertained, if the amount exceeded the sum paid, the excess was to be paid by the purchaser; if it did not equal that sum, the deficiency was to be repaid by the receiver. The purchaser was to assume all obligations of the leases and all contracts made by the defendant company or by the receiver, and to indemnify the receiver from all liability on account of the same. On the adjustment of the accounts a dispute arose between the parties, which, on this appeal, is narrowed down to the question whether the purchaser should be allowed for the following item. The accrued rent from the Watson Stores was nominally $19,537.85. An examination was made of the grain in store and the grain weighed. It then appeared that there was a shortage which would amount in money to $7,671.90. The purchaser claims that this sum should be deducted from the apparent amount of the accrued rent. This the appellant disputes. The Special Term decided the question in favor of the purchaser.

The claim of the appellant is that, under the lease to the Atlantic Company, the covenant to pay for shortages was only the personal covenant of the lessor; that, properly construed, it was to pay only a single allowance for shortage, to be ascertained at the termination of the lease, and that no claim against the lessor could arise until that time; that hence it was not a proper set-off against the receiver's claim for rent, and that the purchaser neither assumed nor incurred any liability for the shortage.

We are of opinion that the covenant is not personal, but binds the assignee of the reversion. By the terms of the lease the covenants were to bind the successors and assigns of the parties. But though such was the intent of the parties, that intent would be inoperative,

unless the covenant concerned the thing demised. (1 Woodfall Landlord & Tenant, 162.) A covenant to purchase the improvements made by a tenant on the demised premises runs with the land. (*Coffin* v. *Talman*, 8 N. Y. 465 ; *Lametti* v. *Anderson*, 6 Cow. 307.) But a covenant to purchase chattels from the lessee would not. Therefore, if the covenant to pay for shortage is to be construed as a covenant to pay for chattels, the covenant would be only personal. But such, we think, is not its true construction. The lease is very peculiar in its terms. The rent stipulated was not a fixed sum, but a certain proportion of the net earnings of the defendant's business. If the lessor should pay the lessee for the shortage, it was not thereby to acquire any property. The lease contemplated that, in the use of the premises as a warehouse, the grain might either run short or there might be a surplus. The loss or gain from this cause was to fall upon or inure to the lessor. It was an agreement that practically the rent should be increased or diminished by the surplus or shortage, as the case might be, which should occur in the operations of the warehouse. If not technically rent, both the liability and the right sprang from the enjoyment and use of the demised premises, and we think it so concerned the thing demised as to run with the land. If this view is correct, then the purchaser from the receiver would be responsible to the tenant to the amount of the shortage. It is further to be observed that, by the assignment from the receiver to the purchaser, the latter agreed to comply with all the covenants of the subleases, including that of the Watson Stores.

Nor do we think that, under the lease, there was to be but a single shortage ascertained at the end of the lease. The provision that the covenant " shall apply only to the shortage or overrun ascertained during the term of the lease " does not imply such an intent. It prescribes when the shortages or overruns must be ascertained ; that is, during the term of the lease and not thereafter. In this case the shortage has been ascertained, and, therefore, under the lease its amount was payable within ten days. Hence it would be a good set-off against the accruing rent which would become due on the first of May thereafter.

We also agree with the court at Special Term that the claim of the receiver against the Atlantic Storage Company was on a running

account, and that all that passed to the receiver was the net balance after allowing any set-off of the lessee. If we are correct, either in the view that the covenant would bind the purchaser or that the shortage was a good offset to the rent, it follows that the decision of the Special Term was correct.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

All concurred, except BARTLETT, J., not sitting.

Order affirmed, with ten dollars costs and disbursements.