THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, Appellant, *v.* NATHAN KALVIN, Respondent. (Actions 1 and 2.)

(Argued March 21, 1929; decided April 16, 1929.)

*Frank C. Laughlin* and *John Godfrey Saxe* for appellant. The plaintiff was not called upon to make any election until the appraisers should make their decision. (*Hammann* v. *Jordan*, 129 N. Y. 61.) Where a party stipulates that another shall do a certain thing, he thereby impliedly promises that he will himself do nothing which may hinder or obstruct the other in doing that thing. (*Patterson* v. *Meyerhofer*, 204 N. Y. 96.) The defendant has no right of election. (*Duffield* v. *Whitlock*, 26 Wend. 55; *Reformed Church* v. *Parkhurst*, 4 Bosw. 491; *Wood* v. *Sheehan*, 68 N. Y. 365; *Smith* v. *Rector*, 107 N. Y. 610; *Bamman* v. *Binzen*, 65 Hun, 39; 142 N. Y. 636; *Trustees* v. *Connell*, 179 App. Div. 821.)

*Nathan L. Miller* and *Harold Otis* for respondent. By the lease in question the plaintiff agreed at the end of the term either to renew at a reasonable ground rent or to pay the value of the building, at its election; and completion of the arbitration to fix such rent or value was not a condition precedent to that obligation so as to extend the time for the plaintiff's election substantially beyond the end of the term without the defendant's consent, but only so as to extend the time for the

plaintiff's performance of the alternative elected. (*Zorkowski* v. *Astor*, 156 N. Y. 393; *Van Beuren* v. *Wotherspoon*, 164 N. Y. 368; *Sage* v. *Hazard*, 6 Barb. 179; *Renoud* v. *Daskam*, 34 Conn. 512; *Thiebaud* v. *Vevay Bank*, 42 Ind. 212; *Dickinson* v. *Robinson*, 272 Fed. Rep. 77; *Mutual Life Ins. Co.* v. *Stephens*, 214 N. Y. 488; *Matter of Coatsworth*, 160 N. Y. 114; *Trustees of Columbia University* v. *Kalvin*, 133 Misc. Rep. 270.) The plaintiff having failed and refused to make its election at the end of the term as it agreed to do, the defendant's election thereupon to renew was effective. (*McNitt* v. *Clark*, 7 Johns. 465; *Gilbert* v. *Danforth*, 6 N. Y. 585; *Storm* v. *Rosenthal*, 156 App. Div. 544; *Coles* v. *Peck*, 96 Ind. 333; *Atlantic Coast Line R. Co.* v. *Hallowell*, 2 Fed. Rep. [2d] 674; *Patchin* v. *Swift*, 21 Vt. 292; *Childs* v. *Fischer*, 52 Ill. 205; *Corbin* v. *Fairbanks, Barlow & Co.*, 56 Vt. 538; *Amanda G. M. Co.* v. *People's M. Co.*, 28 Col. 251; *Ellison* v. *Boyd*, 125 S. E. Rep. 493; *Virginian Export Coal Co.* v. *Rowland Land Co.*, 131 S. E. Rep. 253; *Collins* v. *Whigham*, 58 Ala. 438.)

HUBBS, J. On January 1, 1907, the plaintiff and defendant's assignor executed a lease, for a term of twenty-one years, of premises in New York city. The plaintiff will be hereinafter referred to as the landlord, and the defendant as the tenant. The lease contained a provision to the effect that 120 days before the end of the term the parties would select appraisers in the usual way, who should appraise the value of the building placed upon the premises by the tenant, and also the fair rental value of the premises for another term, and that the landlord would " at the end and expiration of the term " either pay the tenant the value of the building as appraised, or at its option grant a new lease for a term of twenty-one years.

At the expiration of the term on December 31, 1927, the appraisers, without fault of either the landlord or

tenant, had failed to compute the valuation of the building, or determine a fair rental for another term. They were still engaged in the performance of their duties as appraisers and had not determined that they differed in judgment, or that they would be unable to agree. The landlord could not, therefore, pay the ascertained value of the building, as the value had not been ascertained, neither could it tender to the tenant a lease for another term, as a "fair rental" had not been fixed. The tenant remained in possession of the premises and on January 12, 1928, twelve days after the expiration of the term, served notice on the landlord that its failure to elect prior to the expiration of the term operated as a renewal of the lease, and that he would pay the rent for a second term of twenty-one years. Thereafter, the landlord commenced this action for a declaratory judgment, praying that it be adjudged that its option still exists. The defendant counterclaimed and asked that it be adjudged that he has a lease for another term of twenty-one years. Upon a motion for judgment upon the pleadings the tenant succeeded, and it was adjudged that the tenant is entitled to a new lease for a term of twenty-one years at a rental to be determined by the appraisers, and that the landlord has lost its option to purchase the building at its appraised value. Did the landlord's option survive the expiration of the term? If so, it was in existence when the tenant served the notice in an attempt to end it and the judgment must be reversed.

The provision for an appraisal contained in the lease is a condition upon which the agreement by the landlord to choose depends. There is also a promise, to wit, that the landlord will choose either to renew the lease at the rental fixed by the appraisers or purchase the buildings at a valuation fixed by them. Each of those terms is vital in the interpretation of the lease. Neither can be deleted without destroying the spirit and intent expressed in the lease. The discussion of the question of the right to

elect having passed to the tenant is beside the mark. That right, if such a right exists, does not come into operation until the landlord is in default. (*Hood* v. *Hartshorne*, 100 Mass. 117.) Here the landlord is not in default because the condition of the lease to be fulfilled before its obligation to choose will come into effect has not been carried out. The appraisal has not been completed. The value of the building has not been determined. The rental for the new term has not been fixed. Until the condition of the lease requiring an appraisal is carried out, the dependent obligation of the landlord to choose will not become operative. The landlord's obligation to choose is conditional upon the fixing of the values by the appraisers. Until such values are fixed by the appraisers, the obligation of the landlord to choose is pending and its obligation to choose remains conditional, but nevertheless remains, to be exercised when the condition of an appraisal has been fulfilled. There can be no breach of the landlord's obligation to choose until the time for the performance of that obligation has arrived, to wit, the completion of the appraisal. The failure of the appraisers to make their report relates to a particular obligation in the lease but not to the contract as a whole. That remains in full force and effect. The failure to report simply extends the landlord's time to choose and excuses its failure to choose before.

It is a general rule, subject to exceptions, that where a contract requires successive acts to be performed by the parties, the covenants which relate to those proceedings are dependent, and neither party can maintain an action against the other without proving performance of such dependent covenants.

At the expiration of the lease the tenant remained in possession. He had a right to do so until the completion of the appraisal and the choice by the landlord under its option to grant a new lease or pay for the building on the premises. For the use of the premises during such period

he is liable to the landlord for an amount equivalent to the rental reserved in the lease, and not for the amount fixed by the appraisers as a fair rental. (*Van Beuren* v. *Wotherspoon*, 164 N. Y. 368; *Doyle* v. *Fish Corp.*, 144 App. Div. 131; affd., 214 N. Y. 633; opinion on motion for reargument, 216 N. Y. 627; *Paine* v. *Rector, etc.*, 7 Hun, 89.)

If the landlord violates its implied obligation of good faith by preventing an appraisal, the tenant may continue in possession, being liable to pay for the use of the premises the amount reserved as rent in the lease or vacate the premises and maintain an action to recover his damages. Upon the completion of the appraisal, if the landlord fails and neglects to make a choice, it may be compelled to do so in an action by the tenant. (*Smith* v. *Rector, etc.*, 107 N. Y. 610.)

The fact that the appraisal had not been completed at the end of the term was not the fault of the landlord and the tenant cannot, therefore, put it in default by the service of a notice.

" He must continue to act till he puts the lessor in the wrong, or else makes it manifest that no suitable persons can be obtained to do the service [act as appraisers] within a reasonable time." (*Hood* v. *Hartshorne, supra.*)

As in the case of *Zorkowski* v. *Astor* (156 N. Y. 393) there is no covenant in the lease on the part of the tenant to accept a tender by the landlord of the value of the building, or a new lease. In that case (at p. 397) Judge VANN wrote: " The lessor was bound, after a valid appraisal, to elect to purchase or to renew, but when he had made his election the lessee was not bound to accept the offer on his part in either form because she had not agreed to If he elected to purchase, self-interest would, doubtless, induce her to accept the money, but if he elected to renew the lease she might prefer to decline it, as the rent might be so high that she would rather *lose her building* than agree to pay it for the long period named."

When the landlord expresses its choice the only right left n the tenant, under the terms of the lease, is to accept or reject the offer. If the landlord offers a renewal and the tenant rejects it he loses the building and cannot compel the landlord to pay the value of the building as fixed by the appraisal. If that were not so the landlord would not have an option but the option would be with the tenant, and he could elect in any event to compel the landlord to purchase the building. Clearly that was not the intent of the parties.

In each action the judgment of the Appellate Division and that of the Special Term should be reversed and judgment directed in favor of the plaintiff, declaring plaintiff's option still in force, with costs in all courts.

CRANE, J. (dissenting). I am for affirmance.

The one definite date in the minds of the parties to this lease was the date of the expiration of the term. About that there was no doubt; it was a fixed time. "At the end and expiration of the term hereby granted," says the lease, " either pay to the said party of the second part, her executors, administrators or assigns, the just and full value, at that time, of any building built and constructed in the manner hereinbefore mentioned, and in conformity with the covenants hereinbefore contained, which may be standing upon the said demised premises at the expiration of the said term, such value to be ascertained in the manner hereinafter mentioned or, at the option of the said parties of the first part, their successors or assigns, grant a new lease to the said party of the second part, her executors, administrators or assigns, at her or their expense, for a further term of twenty-one years, to commence from the expiration of the term hereby granted, at a reasonable yearly ground rent, payable half-yearly, to be ascertained as hereinafter mentioned."

The method provided for ascertaining the value of the buildings or the amount of the renewal rent was by

arbitrators to be nominated by the parties at least one hundred and twenty days before the expiration of the term.

Two things the parties clearly had in mind. One was the expiration of the term. Whatever was to be done was to be finished or completed by the end of the term. The second was that the arbitration would be complete by that time. The money was to be paid, or the lease renewed by or at the end of the term. When the lessee signed this lease prepared by the owner, he had every reason to expect from its terminology that at the end of the term he. would know his exact position. The owner, not he, was the one to speak and make this certain.

The lease did not use in this connection the word "elect" or "election." It said the lessors were to pay or to give a lease. As both of these acts were to be done before the end of the term, the acts themselves embodied or included the "election." The main, underlying, fundamental idea, however, was the determining, finally settling by the end of. the term, what these two parties were to do for the future. There was to be no period of suspension; the lessors were to settle for the lessee whether he would get cash for his buildings or get a new lease.

That "election" was in the minds of the parties and contemplated by them is evidenced by other portions of the lease, such as that which reads as follows: "That if the party of the first part * * * having, before the expiration of any term, *elected* to pay for any such building, * * * shall neglect to pay or offer to pay for the same, according to the valuation made as above provided, then the said party of the second part * * * , shall and may hold and continue in the possession of the said demised premises until such payment shall be made."

And again, at the end of a renewal of the lease, it is provided that the lessee at the end of such third term or within twenty days thereafter may take down and remove the buildings "unless the said parties of the first part

\* \* \* shall elect to purchase and take to their own use such building or buildings, at two-thirds of the just value thereof, to be ascertained in the manner hereinafter mentioned."

Surely in this latter instance, the lessors would be obliged to " elect " within the twenty days, although the value might be ascertained thereafter.

" Election," therefore, was contemplated by the parties. The one contingency which the lessors failed to provide for in their lease was the failure of the arbitrators to determine the value or renewal rental before the expiration of the term. The contingency has happened, but the underlying purpose and object remain the same. The lessors could have " elected," even though they could not completely perform by the end of the term. Nothing in the world prevented their " election." They could not pay the value for the buildings, as that has not yet been ascertained; they could have given a lease at a rental to be subsequently fixed by arbitration, but whether they could or not, they could have " elected " by or at the expiration of the term to purchase at the price subsequently to be fixed, or to give a lease at a rental to be fixed as provided for. The lessee upon such " election " and notification would be obliged to act as provided for in the lease; that is, he would be obliged to take subsequently the amount determined by the arbitrators; or he would be obliged to take a lease thus " elected " to be given, or lose his buildings. In other words, at the end of the term the rights of the parties were to be determined, the position was to be made known. Although the lessors could not pay an exact sum of money or give a lease with a definite rental, they could have done the next best thing, which, for all practical purposes, would be just as good. They could have " elected " and declared their position or decision, leaving the amounts to be subsequently determined. This is not new or unusual in leases or agreements.

To take the position that the lessors could wait perhaps months or years for the decision of the arbitrators would be extremely unfair and unreasonable to the lessee. At the end of his term, he would not know whether he was a lessee or what he was. What would be his position? What estate would he have? I confess I do not know. The hold-over could not be a tenancy at will. The lessee could not leave the premises or give up the tenancy without forfeiting the buildings. He would be held in suspense at the will of the lessor or the arbitrators for an indefinite time; a suspense against his will. He could not give subleases; his subtenants would have no assurance of staying on; he would have an empty building on his hands, awaiting the slow measure of arbitration machinery. Neither could he make improvements or repairs if he were a manufacturer; value was to be determined as of the end of the term. This uncertainty would be hanging over his head with no means whatever of making it certain until the decision of the arbitrators. At any moment they might fix the value and the renewal rent; the lessors then could take the buildings, or offer a lease at their "election." *The time, however*, when they could do these things, would be absolutely beyond the determination of man, whereas the lease prepared by these parties *fixed* a definite time for such determination, to wit, the end of the term.

The courts below, in my judgment, have properly disposed of this case in holding that the lessors, having taken the position that they would not "elect," even within a reasonable time after the expiration of the lease, the lessee had the right to "elect" for himself. I feel that no injustice will be done by the affirmance of this judgment.

POUND, LEHMAN and KELLOGG, JJ., concur with HUBBS, J.; CRANE, J., dissents in opinion; O'BRIEN, J., not voting; CARDOZO, Ch. J., not sitting.

Judgments reversed, etc.