DANIEL HOLDING CORPORATION, Respondent, *v.* TWO THIRTY FOUR WEST FORTY SECOND STREET CORPORATION, Appellant, and CHARLOTTE G. WILLIAMS and Others, Respondents.

First Department, June 24, 1938.

*Sidney R. Fleisher*, for the appellant.

*William Klein* of counsel [*Isidor Frey* with him on the brief; *Leopold Friedman*, attorney], for the plaintiff-respondent.

*J. G. Fink* of counsel [*Eidlitz, French & Sullivan*, attorneys], for the respondents Charlotte G. Williams, Frederic G. Carnochan and Sibyll B. Carnochan.

*Henry G. Seipp* of counsel [*Sheppard & Seipp*, attorneys], for the respondent Irving Trust Company, as executor of the estate of Ethel May Goodridge, deceased.

*Walbridge S. Taft* of counsel [*Cadwalader, Wickersham & Taft*, attorneys], for the respondent The Bank for Savings in the City of New York.

CALLAHAN, J. This action came before the court on the suit of plaintiff for a declaratory judgment decreeing that the estate and rights of defendant-appellant under a lease had terminated. Defendant-appellant, in its counterclaim, sought to be declared the owner of a theatre building erected by it on the premises, to recover the value of the building, and to have a lien in its favor declared therefor.

In 1902 a lease was granted to appellant for certain premises on West Forty-second street, New York city, upon which there were then some old buildings. The term fixed was for thirty years from February 1, 1903. Under the lease the tenant was to remove the old buildings and to construct and equip a theatre at a cost of not less than $125,000. The rent was fixed at $8,000 a year, and taxes were payable by the tenant.

The appellant removed the old buildings and constructed the theatre. For twenty-nine years it occupied the same and paid rent and taxes.

Plaintiff-respondent is the owner of the premises, being the grantee of the landlord. In 1924, when plaintiff became the owner, a first mortgage of $125,000 and a second mortgage of $100,000 were placed on the premises. Both mortgages remain of record. The defendants-respondents are the holders thereof as assignees.

At the time the mortgages were recorded the theatre building had been erected and equipped.

The appellant failed to pay the second half of the 1931 taxes, and the quarterly installment of rent due February 1, 1932. Summary proceedings were thereupon brought in the Municipal Court for the removal of the appellant. The precept in such proceedings was issued on February 5, 1932, and a warrant of dispossess issued

on March 21, 1932. Real estate taxes for the year 1932, amounting to $22,512, were assessed against the premises by the city of New York on March 10, 1932.

The lease contained the following material provisions:

" Provided always that upon the non-payment of the said quarter yearly rent above mentioned and reserved, or any part thereof, when the same shall become due and payable, as aforesaid; or if the said party of the second part, its successors or assigns shall violate any covenant, agreement or proviso by it to be performed and fulfilled; and upon the non-payment of the said quarter yearly rent above mentioned and reserved, or any part thereof, when the same shall become due and payable, as aforesaid; or if the said party of the second part, its successors and assigns, shall not well and faithfully observe, fulfill, perform and keep all and singular the covenants and conditions hereinafter mentioned and contained on its or their part to be observed, performed or kept, then and at all times thereafter it shall and may be lawful for the said parties of the first part, their successors or assigns, or the persons then entitled to the reversion in such demised premises or any part thereof, in the name of the whole to re-enter and the same to have again, repossess and enjoy, with all rights appertaining to the same as of their former estate and interest therein, anything herein contained to the contrary in anywise notwithstanding; but the parties of the first part their successors or assigns, shall be entitled at their election, instead of terminating this lease for the breach of any covenant, to restrain by injunction such violation of the covenant.

" And Provided Further, and this present lease is upon this express condition, that if the said party of the second part its successors or assigns shall at any time during the term hereby granted execute, do, commit, permit or suffer any deed, act matter or thing contrary to any covenant on its part herein contained, or shall fail in the performance of any or either of the covenants, conditions or provisos in these presents contained, which on the part and behalf of the said party of the second part its successors or assigns, are or ought to be observed, performed, fulfilled and kept; then and from thenceforth this present indenture and the estate hereby granted and every clause, article and thing herein contained on the part and behalf of the said parties of the first part to be performed, fulfilled and kept, shall cease determine and be utterly void to all intents and purposes whatsoever, anything herein contained to the contrary notwithstanding; excepting, however, in this instance, that the privilege shall remain to the parties of the first part, their successors or assigns, of exercising their

right to purchase the building and the improvements and appurtenances erected upon the hereby demised premises in the manner hereinafter provided for."

A covenant for payment of taxes was also contained in the lease. Under it the lessee was required to pay all taxes that might be assessed on the premises, and, if same were not paid within thirty days after they were levied, they were to become part of the rent and payable as such.

Then followed a paragraph which dealt with the building which is the subject of this action. Provision had already been made in the lease for the erection of such building. The lease thereupon stated that at the end or sooner determination of the lease the buildings and furnishings were to become the property of the landlord at their reasonable value at the time. Provisions were made in the lease for the method of ascertaining the value of the buildings and the furnishings, and for arbitration with respect thereto in the event of a disagreement of the parties. There was no covenant in the lease whereby any liability of the tenant survived ouster in summary proceedings.

This appeal presents the following questions: (1) Did the lease impose on the landlord liability to compensate the tenant for the value of the theatre building after a dispossess for default in payment of rent? (2) was the covenant of the landlord to pay for the building one running with the land? (3) did said covenant create any lien in favor of the tenant, and, if so, was it superior to that of the mortgagees-respondents? (4) did the tenant's liability for rent, taxes, etc., terminate as of the date of the issuance of the precept in the summary proceedings, or as of the date of the issuance of the warrant thereunder?

The question of the construction of the lease involves a consideration of the intention of the parties, as evidenced by the whole of the instrument. There is first found in the lease a provision that, in the event of breach of a covenant or condition by the tenant, the landlord might re-enter and repossess and enjoy the premises " with all rights appertaining to the same as of their former estate and interest therein." Next is a limitation of the term in the event the tenant fails to perform any of the covenants of the lease. There is an express exception contained in this provision with respect to the limitation of the term, which states that the landlord shall have the " privilege " of exercising the right to purchase the building, in the event of such limitation. Later is found the covenant that at the end *or sooner determination* of the term the buildings are to become the property of the land-

lord at their reasonable value. These clauses, read together, indicate the intention of the parties that the buildings were to be purchased by the landlord whenever the term should end. The requirement to purchase would seem to be independent of performance by the tenant of the covenant to pay rent, for the use of the phrase — "sooner determination of the lease "— would seem to include a requirement to pay, following re-entry for breach of covenant. The question of the dependency of the covenant is, therefore, not one left to inference or implication, or to be based upon consideration of the equities. It has been fixed by the plain language of the instrument.

As was said in *Jacob & Youngs* v. *Kent* (230 N. Y. 239, at p. 241): "Some promises are so plainly independent that they can never by fair construction be conditions of one another.".

Were a consideration of the equities the determinative factor, it would likewise seem, under the authorities, that the court should decree the covenants to be independent, in order to avoid forfeiture after twenty-nine years of a thirty-year term had expired. (See *Berry* v. *Stuyvesant*, 245 App. Div. 516.)

The construction above noted is also supported by the provision that the landlord is to have the "privilege" of purchasing the building on the limitation of the term. This expression clearly creates an obligation to purchase in the event the term was limited, for it seems plain that the landlord was not to be given a mere option of either paying or not paying for the building in such an event. While such option might be provided for by agreement of the parties (See *People's Bank* v. *Mitchell*, 73 N. Y. 406), it is only where the language used in the contract leaves no alternative that the court would place the matter of payment solely within the voluntary choice of one party.

Cases where the landlord had the option to pay for a building or renew the lease, such as *Bates* v. *Johnston* (58 Hun, 528); *Glaser* v. *Cumisky* (16 N. Y. Supp. 89), and *Kutter* v. *Smith* (2 Wall. 491), are distinguishable. Where a lease contains such an option the lessor does not solely undertake to pay for improvements. He has the choice of doing so, or granting a new term. If the lessee had forfeited his right to renew, or had vacated the premises, there would be no obligation by the lessor to pay.

As to the second question for determination, it would seem clear, under the authorities, that we are required to hold that the covenant to purchase the building was one running with the land. (*Belden* v. *Union Warehouse Co.*, 11 App. Div. 160; *Douglaston Realty Co.* v. *Hess*, 124 id. 508.)

Regarding the third question involved, we find that the lessee had no lien for the purchase price of the building. The building became part of the realty, and in the absence of an express condition to the contrary, title vested in the lessor. The provision that the building shall become the property of the landlord at the termination of the lease was not such an express provision reserving title in the lessee as to justify a contrary holding. (*People ex rel. International Nav. Co.* v. *Barker*, 153 N. Y. 98; *People ex rel. H. R. Day Line* v. *Franck*, 257 id. 69.)

In the absence of an express or clearly implied provision for a lien the lessor's liability was for a money judgment only. (*N. Y. Dyeing & Printing Est.* v. *DeWestenberg*, 46 Hun, 281; McAdam on Landlord and Tenant [5th ed.], § 135.) No such provision for a lien is found in the present lease, nor does any implication arise requiring an intention to grant same. If anything, the provisions indicate that the lessors were to recover an unincumbered fee in the event that they repossessed themselves of the property. No right was granted to the lessee to retain possession of the building until it was paid for it. The lessors covenanted merely to pay for the building. The mortgagees' interest, therefore, must be held to be free of any lien with respect to the right of the lessee to be compensated for the building.

The remaining question concerns the rent and taxes claimed by plaintiff.

A quarterly installment of rent was due in advance February 1, 1932.

Under the Revised Statutes, prior to the enactment of the Code of Civil Procedure, it was held that the tenant was obligated to pay the rent which became due before the issuance of the warrant, and that from the time of default the tenant after warrant issued was a trespasser and liable as such to pay for the use and occupation of the premises. (*Hinsdale* v. *White*, 6 Hill, 507.) The Code added the following in section 2253 (re-enacted in Civ. Prac. Act, § 1434): " except that if [the issuing of the warrant] does not prevent a landlord from recovering, by action, any sum of money, which was, at the time when the precept was issued, payable by the terms of the agreement, as rent for the premises; or the reasonable value of the use and occupation thereof, to the time when the warrant was issued, for any period of time, with respect to which the agreement does not make any special provision for payment of rent." In his note to the Code section Mr. Throop says that the added part is new in form, but it is in accordance with the construction given the original in the *Hinsdale* case.

Rent due at the time of the issuance of the precept, as distinguished from what would be due at the time of the issuance of the warrant, is recoverable. (*Rainier Co.* v. *Smith,* 65 Misc. 560, referring to dicta in prior decisions.)

It would seem to follow that upon the issuance of the warrant on March 21, 1932, the tenancy was terminated as of February fifth, the date of the issuance of the precept, and that appellant's liability for taxes was the amount due for taxes as rent upon the latter date.

Plaintiff contends, however, that the term continued down to March twenty-first, the date of the issuance of the warrant, and as the 1932 taxes were assessed prior to that date appellant is required to pay them.

The lease provides that the tenant will pay all taxes, assessments, charges and water rates that may be assessed on the premises, and in the event that any tax or assessment shall not be paid within thirty days after the same shall have been levied then the same " shall become part of the rent of said premises and the amount thereof shall be added to the rent payable on the next quarter day thereafter, and the next payment of rent shall be increased in such amount."

The effect of the non-payment of the 1932 taxes within thirty days after levy, assuming that the lease did not terminate until the issuance of the warrant, was to add the taxes as rent to the rent which would have become due May first; but as the tenant's liability for rent terminated February fifth, we do not see how the demand for taxes may be sustained.

The judgment appealed from should be reversed, with costs, and judgment directed in accordance with this opinion, with costs.

MARTIN, P. J., O'MALLEY and TOWNLEY, JJ., concur; COHN, J., dissents and votes for affirmance.

Judgment reversed, with costs, and judgment directed in accordance with opinion, with costs. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.