In the Matter of NEW YORK INVES-
TORS MUTUAL GROUP, Inc.,
Bankrupt.

No. 91347.

United States District Court
S. D. New York.

July 3, 1957.

See also 143 F.Supp. 51.

Bernard A. Grossman, New York City, for trustee.

David Leavenworth, New York City, for East Netherland Holding Co., Joseph H. Robins, New York City, of counsel.

Asher Bob Lans, New York City, for mortgagees. Stanley N. Queler, New York City, of counsel.

WEINFELD, District Judge.

The trustee of New York Investors Mutual Group, Inc., bankrupt (hereinafter sometimes referred to as landlord or lessor) seeks to review an order of the Referee in Bankruptcy which adjudged that the East Netherland Holding Co. (1) has a lease valid as against the trustee upon real property owned by the bankrupt; (2) is entitled to remain in possession of, and is not required to surrender, the premises until the value of the buildings thereon is actually paid or duly tendered to the said respondent; and (3) has a valid lien on the real property for the payment of the value of the buildings and it is not limited to filing a general claim therefor.

The East Netherland Holding Co. (hereinafter sometimes referred to either as respondent or tenant), while successful upon the merits in defeating the trustee's motion, cross-moves to review so much of the Referee's order which held that the Court of Bankruptcy had jurisdiction to determine by summary proceeding the issues posed by the trustee's motion.

The facts are as follows:

On October 5, 1955 when an involuntary petition in bankruptcy was filed against the bankrupt it was the fee owner of a plot of land located at 19th Street and Third Avenue New York City. The respondent, East Netherland Holding Co., was then in possession of the land and three buildings thereon under a 21-year ground lease which had been entered into in April, 1935, between the respective predecessors in interest of the bankrupt and the respondent and was due to expire on April 30, 1956—seven months after the filing of the petition in bankruptcy.

The lease contained a provision under which the landlord (and its successors or assigns) had the choice either to grant a renewal for a further term of 21 years or to pay to the lessee the value of the buildings. It also provided that if the landlord should refuse to grant a renewal, the lessee (including its successors or assigns) "shall not be compelled to surrender the premises until such payment be made or tendered". The tenant covenanted that in the event the landlord decides to pay the value of the buildings and "shall actually make such payment or tender the same" then it would deliver up the buildings unto the possession of the landlord, without delay. The lease contains no provision regarding bankruptcy, or the consequences of an adjudication, of either the lessor or lessee as a bankrupt.

The trustee on December 5, 1955, notified the respondent that he elected to "reject" the 1935 lease. The respondent thereupon demanded that the trustee pay the value of the three buildings to be determined by arbitrators as set forth in the lease and asserted a right to remain in possession until that sum was determined and paid to it. The respondent designated its appraiser and arbitrator.

The trustee refused to make payment and failed to designate an arbitrator. Instead he brought the present proceeding before the Referee. His petition in effect asserted that the lessee's refusal to surrender possession of the premises until it received payment for the buildings constituted a cloud on the trustee's right, title and interest in the property, and prayed that the property be sold free of any asserted lien and right of possession. Essentially the trustee's position

was and is that the lessee is an unsecured creditor with respect to the claimed value of the buildings.

The 1935 lease was not recorded at the time of its execution. It was a renewal of a previous 21-year lease made in 1914, which contained identical terms for a renewal or payment of the value of the buildings. The 1914 lease was duly recorded. The 1935 lease was not recorded until after the bankruptcy. However, the tenant with whom the renewal lease was entered into in April, 1935 (upon the expiration of the 1914 lease) was the same tenant named in the 1914 lease and had been and remained in continuous possession under both leases until November, 1953 when it assigned its interest in the leasehold to the respondent in this proceeding. This assignment to the respondent which specifically referred to the 1914 lease and its recording, as well as any renewals, was recorded on December 1, 1953—prior to the acquisition of title by the bankrupt in August, 1954. When the bankrupt acquired title, the respondent East Netherland Holding Co. was in possession of the premises, and the bankrupt took title subject to the 1935 renewal lease which had been assigned to the respondent. Thereafter the bankrupt and later its trustee accepted the rental payments from the respondent in the amount specified in the lease.

In limine, there is the issue of jurisdiction. The respondent contended that the Bankruptcy Court was without jurisdiction to determine the validity of the asserted lien—it urged that the issue should be decided in a plenary action—whether by ejectment, dispossess, a bill to quiet title or one for declaratory judgment. The Referee overruled the plea.

■■■ He applied the law of the State of New York which holds that where the relationship of landlord and tenant has once been established, the possession of the latter and that of his grantees and assignees is the possession of the landlord and not hostile or adverse.[1] The Referee reasoned [2] that since the tenant was asserting, under the very lease which gave rise to the landlord and tenant relationship, a right to possession until it was paid the value of the buildings, such possession was not adverse. Accordingly he concluded there was constructive possession in the landlord—bankrupt, at the time of the adjudication and that the Bankruptcy Court had exclusive jurisdiction to determine all questions of title, possession or control of the bankrupt's property, including the validity of the asserted lien.[3] Thus he reached the merits of the controversy.

I am in accord with the Referee's conclusion but upon another ground. Here there can be no question that the property was in custodia legis at the time of adjudication. The tenant was in lawful possession under a lease which still had seven months before expiration and as yet no claim had been asserted as to any alleged lien, and indeed none could have been asserted, because the landlord, prior to adjudication, had not decided either to renew the lease or to take over the property. The tenant's claim that it had a lien for the value of the property and a concomitant right to remain in possession until paid arose only after the property had already been under the jurisdiction of the Bankruptcy Court.

We next consider the basic claim—whether the lessee, East Netherland Holding Co., has a lien for the value of the property with a right of possession until paid, or whether, as the trustee contends, the lessee must surrender possession and is relegated to the status of a general creditor for the value of the buildings as found by the arbitrators.

1. Whiting v. Edmunds, 94 N.Y. 309; Bedlow v. New York Floating Dry-Dock Co., 112 N.Y. 263, 287, 19 N.E. 800, 2 L. R.A. 629.

2. Citing In re Eakin, 2 Cir., 154 F.2d 717; Fish v. East, 10 Cir., 114 F.2d 177.

3. Isaacs v. Hobbs, Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. Cf. 2 Collier, Bankruptcy 505 (14 Ed. 1940); Matter of Mt. Forest Fur Farms, 6 Cir., 122 F.2d 232, 243.

When the trustee acting under Section 70, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. b, gave notice on December 5, 1955 to the tenant that he elected to "reject" the lease, the unexpired term was seven months.

Section 70, sub. b, insofar as pertinent provides: "Within sixty days after adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property. * * * Unless a lease of real property shall expressly otherwise provide, a rejection of such lease or any covenant therein by the trustee of the lessor shall not deprive the lessee of his estate."

The trustee contends that the "estate" of the tenant was co-extensive with the 21-year lease and the sole estate which survived the trustee's rejection was the unexpired term of seven months.

I am of the view that the trustee's position cannot be upheld. To do so is to disregard the nature of the "estate" which by the lease the parties intended to, and did, create in favor of the tenant. To say that the tenant's estate was co-extensive with, and limited to, the terminal date of the 21-year renewal period disregards other covenants and provisions of the lease.

The lease was for a 21-year term or at the option of the landlord for a further renewal term or, if the landlord decided not to renew, for the original 21 years plus a right to continued possession in favor of the tenant until the landlord complied with his obligation to pay to the tenant the value of the buildings. The right of the tenant "not to be compelled to surrender the premises until such payment be made or tendered" was part of the "estate" granted to the tenant and was a covenant which was not destroyed by the trustee's notice of rejection.

A tenant's right to possession of land constitutes part of the "estate" granted to him.[4] The strict interpretation of "estate", as urged by the trustee, so as to make it co-terminous with the 21-year period notwithstanding that the landlord failed to make payment for the buildings contrary to the covenant in the lease, denudes the lease of the clear purpose intended by the parties and deprives the tenant of the full enjoyment of his estate. And it is unnecessary to decide whether, in the period following the date fixed for termination while the tenant continued in possession pending payment, the true relationship of landlord and tenant existed.[5]

The New York law on the subject is clear. First a covenant by the landlord to pay a tenant the value of the buildings upon the expiration of the lease, is a covenant running with the land.[6] Second, where the parties expressly agree a tenant is entitled to possession until actual payment is made, he has a lien until the payment is made.[7] It is only where there is no express or clearly implied provision for a lien to secure the payment for the improvements upon expiration of the lease, that the lessor's liability is only for money damages.[8] The New York law has been stated succinctly by the Court of Appeals:

"There is also a promise, [in a lease of the type here in issue] to wit, that the landlord will choose either to renew the lease at the rental fixed by the appraisers or purchase the buildings at a valuation fixed by them. Each of those terms is vital in the interpretation of the

4. Trustees of Columbia University in City of New York v. Kalvin, 250 N.Y. 469, 166 N.E. 169, 63 A.L.R. 1151.

5. Cf. Trustees of Columbia University in City of New York v. Kalvin, 250 N.Y. 469, 166 N.E. 169, 63 A.L.R. 1151.

6. Daniel Holding Corp. v. Two Thirty Four W. F. S. St. Corp., 255 App.Div. 8, 5 N.Y.S.2d 391.

7. Cf. Sheridan Associates v. Potasnik, Sup., 155 N.Y.S.2d 81.

8. New York Dyeing & Printing Establishment v. De Westenberg, 46 Hun 281; Daniel Holding Corp. v. Two Thirty Four W. F. S. St. Corp., 255 App.Div. 8, 5 N.Y.S.2d 391.

lease. Neither can be deleted without destroying the spirit and intent expressed in the lease. * * *

"At the expiration of the lease the tenant remained in possession. He had a right to do so until the completion of the appraisal and the choice by the landlord under its option to grant a new lease or pay for the building on the premises. For the use of the premises during such period he is liable to the landlord for an amount equivalent to the rental reserved in the lease, and not for the amount fixed by the appraisers as a fair rental".[9]

■ The trustee places great store upon the circumstance that the 1935 lease was not recorded. Under the facts of this case the omission to record the lease is not of special significance. Where a tenant is in actual possession of premises under a valid lease, one taking a subsequent conveyance is charged with notice of the lease although unrecorded.[10] Moreover, the fact is that although the 1935 lease was not recorded until after the bankruptcy, its assignment to the respondent was recorded in December, 1953, eight months before the bankrupt acquired title and at which time the tenant and its predecessor had been in continuous, open and notorious possession since the execution of the 1935 lease. The assignment to the respondent specifically referred to the 1914 lease "together with the renewals thereof" and this fact plus the possession by the tenant and the further circumstance that the bankrupt took title subject to such tenancy, renders the trustee's position without substance. Clearly the bankrupt upon acceptance of

the deed had as effective notice of an outstanding lease as it could have obtained if the lease had been recorded. Further, the assignment was recorded almost two years prior to adjudication. Under all the circumstances here disclosed no person could have been deemed a bona fide purchaser for value and without notice.[11]

■ The New York State Recording Statute protects only "bona fide purchasers * * * for value and without notice, against unrecorded conveyances". Neither the trustee, in bankruptcy, who stands in no better position than the bankrupt nor any other person could effectively claim in the light of all the facts, to be a bona fide purchaser for value. While the mortgagee, who supports the trustee's petition, purports to raise issue, under Section 60, sub. b, 11 U.S.C.A. § 96, sub. b, there is in fact no question of perfection thereunder.

■ Neither is there substance to the mortgagee's attack upon the recordation of the assignment for its failure to include in the acknowledgement the words "to me known". Apart from the fact that the law has progressed so that it no longer worships at the shrine of formalism, the New York Real Property Law, McKinney's Consol.Laws, c. 50, § 309, relating to corporate acknowledgements specifically states that the acknowledgement must be in "substantially" the form described. Here, there was substantial compliance.[13] Moreover the cases cited by the mortgagee refer to individual acknowledgements under Section 303 of the Real Property Law and not to corporate acknowledgements under Section 309.

9. Trustees of Columbia University in City of New York v. Kalvin, 250 N.Y. 469, 472–474, 166 N.E. 169, 171, 63 A.L.R. 1151.

10. Phelan v. Brady, 119 N.Y. 587, 23 N.E. 1109, 8 L.R.A. 211; Spielman Motor Sales Co. v. Pollack, Sup., 160 N.Y. S.2d 997.

11. Where a purchaser of land has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or some title in conflict with that which he is about to acquire, he is presumed to have ascertained the extent of such prior right. Sweet v. Henry, 175 N.Y. 268, 275, 67 N.E. 574; Anderson v. Blood, 152 N.Y. 285, 46 N.E. 493; McPherson v. Rollins, 107 N.Y. 316, 14 N.E. 411.

13. Smith v. Boyd, 101 N.Y. 472, 5 N.E. 319.

The report of the Referee is confirmed but without prejudice to a further application by the trustee for leave to sell the premises free of any lien for the value which may be determined for the buildings and free of any right of possession in favor of the tenant upon condition that an appropriate provision is contained in the order which shall fully protect the tenant so as to provide for the actual payment of the valuation.[14]

Settle order on notice.

14. See Van Huffel v. Harkelrode, 284 U.S. 225, 228, 52 S.Ct. 115, 76 L.Ed. 256.