**In re FREEMAN et al.**

District Court, S. D. Georgia,
Savannah Division.

Jan. 16, 1943.

164

William A. Wells, Jr., of Savannah, Ga., for debtors.

Geo. H. Richter, of Savannah, Ga., for objecting tenant.

LOVETT, District Judge.

This is a petition for review[1] of the referee's order in a Real Property Arrangement proceeding under Chapter XII of the Chandler Act.[2]  The petition is denied. The reasons should be stated.

One of the debtors owns a small dwelling, comparatively new, and the lot whereon it stands in Savannah, Georgia.  It is subject to a mortgage.  If sold under foreclosure, there would be no equity for the debtor.  It was leased prior to the filing of these proceedings for a term ending November first next.  Under the proposed arrangement it is to be sold at private sale for an amount that will produce $750 above the mortgage.  The buyer will pay cash but his offer is conditioned on being given immediate possession.  He wants to occupy the premises as a home for himself and his family.  The tenant has declined to yield immediate possession. Thereupon, upon application of the debtor and order of the referee, after notice to the tenant and over his objection, the so-called lease was rejected as an executory contract.[3]

The referee found the lease was burdensome; that if not rejected it would prevent a sale at a profit to debtor's general estate; that the bankruptcy court had power to re-

---

[1] 11 U.S.C.A. § 67, sub. c.
[2] 11 U.S.C.A. § 801 et seq.

[3] See 11 U.S.C.A. §§ 713(1), (2), 706(4).

ject it; that the tenant might be evicted in the manner required by state law;[4] that he should yield possession on January 1st, 1943; and he was enjoined from refusing to deliver possession after that date.

The tenant on review says: (a) the referee erred in holding the court had the power to reject the lease, (b) if legally rejected, it did not terminate the "estate" of the tenant, (c) that the tenant, therefore, can not be evicted and (d) the referee erred in issuing the injunction restraining the tenant from refusing to surrender possession on January 1st, 1943.

**1.** Under the Arrangement Chapters of the Bankruptcy Act executory contracts include leases and the court may permit their rejection. 11 U.S.C.A. § 706(4), 713(1). The provisions of Chapters 1 to VII of the Bankruptcy Act insofar as not inconsistent or in conflict with the Arrangement provisions are made applicable to Chapter XII. By § 110, sub. b, of Chapter VII, which relates to the title, duties, etc., of the trustee of one who has been adjudicated a bankrupt, it is provided; "Unless a lease of real property shall expressly otherwise provide, a rejection of such lease * * * by the trustee of the lessor shall not deprive the lessee of his *estate*."[5] This language was added by the Act of June 22, 1938, 52 Stat. 879, the Chandler Act. See Collier on Bankruptcy, 14th Ed., Vol. 4, par. 70, 44, pp. 1238, 1239. It is argued by petitioner that if the rejection of the lease was authorized, the tenant nevertheless must be allowed to remain in possession as his "estate" includes the right of possession. What does this language mean? In liquidation proceedings, where there has been an adjudication, it means that the relation of landlord and tenant is not disturbed, but the contract of rental no longer binds either of them, and the trustee may charge and recover a reasonable rental for the demised premises until the end of the term.[6] Generally speaking, this does not depreciate the value of the property. In case of sale by the trustee a purchaser assured of a reasonable rent for a fixed term will be satisfied, and, meanwhile, a tenant (who is an innocent party) and who may have made his business plans on the assumption he would occupy the premises for the term is not treated inequitably. But should this language be construed in the same way in an arrangement proceeding where it appears (as here) that a sale may not be made at all for fair value if the tenant remains in possession, and where no peculiar equities are asserted by the tenant? I think not. Rather, I think under such circumstances the disaffirmance of the lease renders the tenant one at sufferance or after a fixed date named by the court for vacating, one holding over. If it were otherwise, the whole purpose of the arrangement statute could be defeated by a stubborn tenant who refused to move. There is no greater sanctity about a contract of rental providing for payments monthly than there is about a contract for debt payable in the same way, i.e., a mortgage upon or deed of trust conveying real estate with monthly amortization of the debt. It is clear that in arrangement proceedings under Chapter XII the rights of such creditors may be modified or altered. 11 U.S.C.A. § 861. I see no reason why tenants of the debtor should not be treated in the same manner if the continuance of their contracts in full force prevents an equitable arrangement with creditors. If the tenant is injured by the modification of his rights he is deemed a creditor and has his remedy. 11 U.S.C.A. § 858. See also In re Greenpoint Metallic Bed Co., 2 Cir., 113 F.2d 881. To give to the word "estate" as used in § 110, sub. b, of Chapter VII the meaning petitioner suggests, viz., a right to continue to occupy the premises until the end of the term, renders the section authorizing rejection of executory contracts impotent to accomplish the ends for which it was designed. To give it that meaning creates inconsistency and conflict with the purposes of the Arrangement provisions, and where that happens Chapters I to VII are expressly made inapplicable.

**2.** It is also urged by the petitioner that possession can not be obtained by a summary proceeding like this, as the tenant claims adversely. It is said a plenary action only is the remedy. Courts of bankruptcy may bring in additional per-

---

[4] Ga.Code, § 61-105. The referee looked upon the relationship after the rejection of the lease as in the nature of a tenancy at will. Two months' notice is necessary under the Georgia statute to terminate such a tenancy. Notice was given October 15, 1942.

[5] 11 U.S.C.A. § 110, sub. b.

[6] There is "privity of estate but no privity of contract". In re Wil-Low Cafeterias, Inc., 2 Cir., 111 F.2d 83, 85 (syl. 2).

sons when necessary for the complete determination of a matter in controversy and may determine controversies in relation to the estate of the bankrupt. 11 U.S.C.A. § 11(6) (7). If there is a bona fide adverse claim, an independent action is required, but if the claim is merely colorable or if the trustee has actual or constructive possession, or the rights of the parties are to be determined as matters of law, the bankruptcy court has jurisdiction. And in every case the bankruptcy court has power, in the first instance, to determine whether it has actual or constructive possession.[7] Admittedly here title is in the debtor. The tenant claims possession under a contract with, not adverse to, the debtor. It may even be said the debtor has constructive possession through his tenant.[8] The facts are not in dispute. The rights of the parties are fixed by law. I find the contention that the tenant is an adverse claimant, in the sense we are using it, is colorable only. The referee had jurisdiction.

3. Finally it is said that the Emergency Price Control Act of 1942 [9] limits the power of a court of bankruptcy to require surrender of possession of demised property, and that eviction can be lawfully made only in the manner prescribed by that Act and the regulations issued under it.

Let us examine it. In the statement of the purposes of the Act in the first section Congress declared it to be in the interest of the national defense etc., "to prevent speculative, unwarranted, and abnormal increases in * * * rents". § 901(a). An administrator is set up, and whenever in his judgment such action is necessary or proper to effectuate the purposes of the Act he shall issue a declaration setting forth the necessity for, and recommendations with reference to, the stabilization or reduction of rents for any defense-area housing accommodations within a particular defense-rental area.[10] Maximum rentals have been fixed for Savannah, Georgia, by the administrator. The Act provides further "Regulations, orders, and requirements under this Act may contain such provisions as the Administrator deems necessary to prevent the circumvention or evasion thereof". § 902(g). It is made unlawful "for any person * * * to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order" of the administrator. § 904(a). It is also made unlawful "for any person to remove or attempt to remove * * * the tenant or occupant * * * or to refuse to renew the lease * * * because such tenant or occupant has taken, or proposes to take, action authorized or required by this Act or any regulation, order", etc., thereunder. § 904(b). Aggrieved persons may have the action of the administrator reviewed by a statutory court established by the Act as the Emergency Court of Appeals in the manner provided in the Act, and the decisions of that court are reviewable on certiorari by the Supreme Court of the United States.

By a regulation issued October 22, 1942 [11] the administrator prescribed that "so long as the tenant continues to pay the rent * * * no tenant shall be removed * * * by action to evict or to recover possession * * * or otherwise * * * nor shall any person attempt such removal * * * unless" the tenant does certain things not material here, such as refusing the landlord access to the premises, committing a nuisance on the premises, etc. There is a further regulation to the effect that "Removal or eviction of a tenant for occupancy by a purchaser who has acquired his rights on or after the effective date of the Regulation is inconsistent with the purposes of the Act and the Regulation and would be likely to result in the circumvention or evasion thereof, unless" certain required

---

[7] See Harris v. Brundage Co., 305 U.S. 160, at page 163, 59 S.Ct. 131, 83 L. Ed. 100; Thompson v. Magnolia Co., 309 U.S. 478, 481, 482, 60 S.Ct. 628, 84 L.Ed. 876; Shor v. McGregor, 5 Cir., 108 F.2d 421; Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599; Irby · v. Corey, 5 Cir., 95 F.2d 963; Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405; In re Meiselman, 2 Cir., 105 F.2d 995; First Nat'l Bank v. Fox, 6 Cir., 111 F.2d 810; American Finance Co. v. Coppard, 5 Cir., 45 F. 2d 154; Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 432, 433, 44 S.Ct.

396, 68 L.Ed. 770. See, also, opinion of Judge Mayer quoted in Alco Film Corp. v. Alco Film Service, 2 Cir., 234 F. 55, at page 57.

[8] Fish v. East, 10 Cir., 114 F.2d 177, 178 (18), 189.

[9] Pub.Law 421, 56 Stat. 23, 50 U.S. C.A.Appendix, § 901.

[10] It seems to be conceded by all parties that Savannah, Georgia and the house in controversy come within this classification.

[11] Document No. 6084, Part 1388, particularly §§ 1388, 286(a) and (b) (2).

down payments on the purchase price are made by the purchaser, and three months have elapsed after the administrator issues a certificate authorizing the purchaser to pursue his remedies for removal or eviction of the tenant in accordance with the requirements of the local law.

The proposed owner-occupant here acquired his rights prior to November 1, 1942, the effective date of the Regulation.[12] He has made no application to the administrator for the certificate authorizing him to pursue his remedies against the tenant.

■■ Is this Act applicable to judicial proceedings for the sale of real estate, and particularly to bankruptcy proceedings under Chapter XII? If we look to the declared purposes of the Act, the answer is no. Certainly a court of justice will not be presumed to encourage speculative, unwarranted and abnormal increases in rents or to do anything else that is not in the interest of national defense, and what is being done here is by a court of bankruptcy and not by a "person" who is restrained from acting by, and unless in compliance with, the Emergency Price Control Act. And one of the safest and soundest rules of construction of statutes is to consider the purposes of the legislation. A thing may be within the letter of a statute and yet not within the meaning.[13] The classic quotation in United States v. Kirby, 7 Wall. 482, at page 487, 19 L.Ed. 278, comes to mind. "Common sense accepts the ruling, cited by Plowden, that the statute of 1st Edward II which enacts that a prisoner who breaks prison shall be guilty of felony, does not extend to a prisoner who breaks out when the prison is on fire—'for he is not to be hanged because he would not stay to be burnt'".

■ The Bankruptcy Act, 11 U.S.C. A. § 1 et seq., is a specific, complete, comprehensive statute and is paramount and exclusive in its operations where it applies. The Emergency Price Control Act is a temporary measure, general in its nature. It does not attempt expressly to repeal any part of the Bankruptcy Act. It will not be presumed that by implication it repealed those provisions of the Arrangement Chapters in the Bankruptcy Act which authorized the disaffirmance of executory contracts, including leases of real estate. Repeals by implication are not favored. It is a general rule of law that specific legislation upon a particular phase of a single subject is not affected by a subsequent law relating to a general subject which neither refers to the earlier law nor is repugnant to nor inconsistent with it. Where there are two statutes upon the same subject, the earlier being special and the latter general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special is intended to remain in force as an exception to the general.[14]

■ We are not concerned here with an effort of a landlord to profit at the expense of a wage earner or a person with a relatively fixed and limited income, of whom he seeks to take advantage by unduly increasing the rentals for a home. There is no question of stabilization of rents involved. I find nothing in the action of the referee that amounts to circumvention or evasion of the valid regulations. of the administrator. No "person" is doing any act in violation of any regulation or order. What has been done was done by a court of bankruptcy. No "person" is removing or attempting to remove the tenant. He is being removed by an order of court. Certain of the regulations of the administrator relied on by the tenant are clearly inapplicable because the rights of the proposed purchaser of the property in controversy were acquired before the effective date of the regulations.

■ The equities also preponderate in favor of the removal of the tenant. When removed he may suffer injury, he and his family. As indicated, however, he is not remediless. If injury is done that can be measured in dollars he becomes a

---

[12] The sales ticket was signed September 24, 1942.

[13] Leavenworth, L. & G. R. Co. v. United States, 92 U.S. 733, 23 L.Ed. 634; Wilkinson v. Leland, 2 Pet. 627, 7 L.Ed. 542; Indianapolis & St. L. R. Co. v. Horst, 93 U.S. 291, 23 L.Ed. 898; Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226; United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345. See, also, dissenting opinion Frankfurter, J., in United States v. Monia, 63 S.Ct. 409, 87 L.Ed. ——, decided January 11, 1943.

[14] Washington v. Miller, 235 U.S. 422, 428, 35 S.Ct. 119, 59 L.Ed. 295; United States v. Mammoth Oil Co., 8 Cir., 14 F.2d 705(7, 8), 715; Niagara Fire Ins. Co. v. Raleigh Hdw. Co., 4 Cir., 62 F.2d 705(7), 709.

creditor of the debtor and may assert his rights and share with other creditors of the same class in the arrangement proceedings. On the other hand, if he does not yield immediate possession of the premises, the debtor and his family are injured because they lose the small equity now but not later or otherwise realizable, above the mortgage on the home. And the creditors of the debtor, of whom there are twenty, and who are equally as innocent as the tenant insofar as the proceedings in bankruptcy are concerned, will be also injured. If this home were the only asset of the debtor, they might lose their debts entirely. They will certainly lose some substantial part of their debts if the property can not be sold at a price that will produce an excess over the mortgage. The tenant has been given an opportunity to purchase the property at the same price offered by the proposed buyer. He has failed to avail himself of that privilege. It does not appear that he is financially unable to buy, and I have no doubt that if he exercised the proper amount of diligence he could finance the purchase. He is regularly employed and has a steady income. He is not now a home owner. It would be grossly inequitable to allow him, under these circumstances, to wreck the arrangement plan carefully and equitably worked out in the bankruptcy court.