## In re 325 EAST SEVENTY–SECOND STREET, Inc.

District Court, S. D. New York.

Sept. 11, 1944.

---

[2] Rule 23, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

James A. Beha, of New York City, for Thomas J. V. Cullen, trustee.

Richard L. Rosenbaum, of New York City, for debtor.

Irvin C. Rutter, Regional Enforcement Atty., and Joseph Shankey, Chief Atty., Rent and Services Section, Office of Price Administration, both of New York City, and Fleming James, Jr., Director Litigation Division, and Samuel Mermin, Chief, Briefing Branch, both of Washington, D. C., for intervener.

BRIGHT, District Judge.

Thomas J. V. Cullen, as trustee of the debtor in process of reorganization under Chapter X of the Bankruptcy Law, Act July 1, 1898, Chap. 541, § 101 et seq., as added in 1938, 52 Stat. 883, 11 U.S.C.A. § 501 et seq., petitions for an order authorizing him to collect the rents presently chargeable under existing leases, directing him to abstain from filing notices of maximum rents and registration statements under the regulations of the Office of Price Administration, and adjudicating that this proceeding, this Court, and he are not controlled by the provisions of the Emergency Price Control Act of 1942, Act of January 30, 1942, Chap. 26, 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq., and the rent regulations for housing in the New York City defense-rental area, promulgated thereunder.

The Office of Price Administration was given notice of the application, was permitted to intervene, and is the only one who opposes. It has filed no answering affidavits. The facts alleged in the moving papers are, therefore, undisputed, and, as found by me, are:

The petition herein was filed on May 29, 1943, and on June 3, 1943, was approved and the trustee appointed. The principal asset of the debtor is an apartment house located at 325 East 72nd Street, New York City, within the defense rental area later erected by the Office of Price Administration, and contains 58 rentable apartments, a superintendent's apartment, and six maids' rooms. Twenty-three of the apartments are owned by proprietary tenants, who are stockholders of the debtor and each of whom have 99 year leases. Thirty-five of the apartments are rented on the usual commercial basis under written leases, all of which were in existence prior to the promulgation of the rent regulations mentioned.

After this proceeding was commenced, and the trustee appointed, the Office of

Price Administration specified the bounds of the defense area in question, and on October 8, 1943, promulgated rent regulations for that area, effective November 1, 1943, which, insofar as we are now concerned, provided that no person, regardless of any lease theretofore or thereafter entered into, shall demand or receive any rent, for use or occupancy on and after November 1, 1943, of any housing accommodations, rented on March 1, 1943, higher than the rent charged on that date, and for such accommodations not rented on that date nor during January or February, 1943, but rented prior to November 1, 1943, higher than the first rent charged after March 1, 1943.

Ten of the apartments are rented on a commercial basis at prices higher than the maximum rental mentioned. The number of these apartments, the rental charged, the maximum rent under the regulations, and the fair rental value of the apartments are as follows:

It is conceded that the rent regulations do not apply to or control the twenty-three apartments leased by the proprietary or co-operative tenants.

The real property is encumbered by a mortgage upon which there is due $400,000 of principal and interest thereon from April 1, 1943, upon which has been paid $2500. Shortly after the petition was approved the mortgagee commenced foreclosure which is still pending but stayed. He sought to have the order approving the petition vacated upon the ground that the petition was not filed in good faith because, as he contended, among other things, the property was worth less than the amount due upon the mortgage, and it was unreasonable to expect that a plan of reorganization could be effected because the income of the property was insufficient to pay current and fixed charges, including interest. This application was denied, the opinion being reported in, D.C., 53 F. Supp. 997. Two of the reasons for that de-

| Apt. & Date of Lease | Fair Rental Value | Present Rent | Rent 3/1/43 or 1st Rent Thereafter | Difference between present & 3/1/43 Rent | Difference between present and Fair Rent |
|---|---|---|---|---|---|
| 8A——— 9/43 | $ 1400 | $ 1300 | $ 1200 | $ 100 | $ 100 |
| *16A——— 4/43 | 1550 | 1500 | 900 | 600 | 50 |
| *9B——— 4/43 | 1400 | 1200 | 900 | 300 | 200 |
| 3C——— 6/43 | 1300 | 1041 | 1020 | 21 | 259 |
| 4C——— 6/43 | 1300 | 1200 | 1020 | 180 | 100 |
| *15C——— 4/43 | 1450 | 1200 | 720 | 480 | 250 |
| *2D——— 6/43 | 1200 | 1200 | 600 | 600 | –0– |
| 5D——— 6/43 | 1325 | 1300 | 1200 | 100 | 25 |
| 7D——— 8/43 | 1400 | 1400 | 1200 | 200 | –0– |
| 12D——— 6/43 | 1500 | 1400 | 1320 | 80 | 100 |
|  | $13825 | $12741 | $10080 | $2661 | $1084 |

*The leases on 16A, 9B, 15C and 2D provide for a low off-season rental until October 1, 1943, and for the higher or present rental starting with October 1, 1943.

It thus appears that on an annual basis these present rentals exceed the maximum prescribed rentals by $2661, and are $1084 less than the fair and comparable rental value for such premises.

nial were, that the property was worth more than the mortgage debt, and that the income then being earned justified a conclusion that it was not unreasonable to believe that a plan of reorganization could

be effected. Those conclusions were based upon evidence of the gross rents which the property was then earning, and that there should reasonably be an increase in the receipts from the proprietary tenants of $5000 to bring them up to what those apartments were reasonably worth. It was then assumed as reasonable that the net rents, after the payment of taxes, interest and operating expenses, would be sufficient to meet the annual amortization required by the laws of New York, and this net might well be increased by a tax saving in the reduction of the assessment (which has since been accomplished), by a reduction in interest upon the mortgage, and by a contribution by the proprietary lessees.

Since the argument of this motion, a plan of reorganization has been presented to this court, amended to meet the objections of some of those appearing, which has been found to be fair, equitable and feasible, and will be presented to the certificate holders under the mortgage for their approval. The plan is based in large part upon an estimated gross rental of $85,000. It provides, also, that the "debtor and the tenant stockholders shall be empowered to charge an annual rental not in excess of the rentals set forth in Schedule 'A' (the aggregate of which I have stated) hereto annexed and made a part hereof, during the period when rentals of premises are subject to control and regulation under the Emergency Price Control Act of 1942, and any amendments thereof, unless under such regulations of the Office of Price Administration higher rentals may be charged than those fixed in Exhibit 'A' for the respective apartments."

■ It thus appears, and I so find, that the rentals now charged are essential to a successful reorganization, and that higher rentals, as contemplated by the Exhibit "A" present a better margin of safety.

■ We are thus presented with the question of whether or not the Emergency Price Control Act of 1942 and the regulations under it are applicable and controlling. If they are not, the motion must be granted. If they are, the income from the property must be substantially reduced and the probable success of the plan, as now declared feasible, fair and equitable, may be jeopardized and perhaps defeated.

I do not think that Act is applicable for the reasons (1) it does not repeal expressly or impliedly any portion of the Bankruptcy Act, (2) the property and its income were established and vested in and subject to the jurisdiction of this court before the rental area was erected or the regulations in question adopted; and (3) the sole jurisdiction to determine whether or not a plan of reorganization is fair, equitable and feasible is in this court, and cannot in any way be shared with any other tribunal or administrative body.

The questions presented are novel. The only authority cited in either brief or which I have been able to find, in any way analogous or controlling, is In re Freeman, D.C., 49 F.Supp. 163, which held that in a proceeding under Chapter XII of the Bankruptcy Law, 11 U.S.C.A. § 801 et seq. (relating to real property arrangements) a tenant could be dispossessed notwithstanding rent regulations adopted under the Emergency Price Control Act, which it was held did not apply, and did not impliedly repeal the sections of the Bankruptcy Act there involved.

■■ 1. The Emergency Price Control Act certainly does not expressly repeal any part of the Bankruptcy Act. Repeal by implication is not favored. It does not mention the Bankruptcy Act. It does not substitute the Emergency Court of Appeals in the exercise of the constitutional and traditional bankruptcy jurisdiction. It gives a very limited jurisdiction to the Emergency Court only to set aside regulations, orders and price schedules where the same are not in accordance with law, or are arbitrary or capricious; in other words, where they are invalid; or to dismiss in whole or in part complaints against them, or to remand such complaints, and, with certain exceptions in its power, to restrain. It prohibits other courts from doing these specific things, and from staying or setting aside any provision of the act. It is not to be supposed, absent some specific statement upon the subject, and absent, so far as I have found or has been called to my attention, any authority or intimation to the contrary, that there was any purpose or intention on the part of Congress to affect, limit or take away jurisdiction and powers in bankruptcy which have always been considered paramount and exclusive. New and superior rights and powers over state and other regulatory and administrative bodies were denied in Vinson v. Washington Gas Co., 321 U. S. 489-499, 64 S.Ct. 731. In Interstate Commerce Commission v. Jersey City, 322

U.S. 503, 64 S.Ct. 1129, 1137, the I. C. C. made an order granting to the Hudson & Manhattan Company certain increases in fares between Hoboken, Jersey City and New York. A statutory court set aside the orders and the Supreme Court reversed. Under the Inflation Act of 1942, 56 Stat. 765, 50 U.S.C.A. Appendix, § 961 et seq., the O.P.A. appeared and opposed the increase as inflationary and was overruled. The remarks of Mr. Justice Jackson, while not controlling here, I think are somewhat apropos:

"The court below gave as a second reason for setting aside the two orders that the Commission 'lightly brushed aside' the economic stabilization phase of the case and gave too little weight to the Price Administrator's contentions as to inflationary tendencies of rate increases. It said, and of course we agree, that the 'Commission here is under a distinct duty in this particular case, to give full effect to war time conditions and the stabilization legislation.'

"But that does not answer the real question, which is what is the effect of the stabilization legislation. In seeking this answer we are inquiring as to the relative powers and responsibilities of two federal agencies. Congress was free to apportion their functions as it saw fit and to transfer any part of the normal responsibility of the Commission to the Price Administrator or other executive agencies. Commerce Commission authorization of rate increases could have been subjected to review or veto so far as any objection of the Commission is concerned.

\* \* \* \* \*

"In the light of such history this Court has been reluctant to construe the emergency legislation as giving the Administrator standing to make mandatory demands upon other tribunals or to strip them of their usual discretions.

\* \* \* \* \*

"The Interstate Commerce Commission has responsibility for maintaining an adequate system of wartime transportation. It is without power to protect these essential transportation agencies from rising labor and material costs. It can decide only how such unavoidable costs shall be met. They can in whole or in part be charged to increased fares, or they can be allowed to result in defaults and receiverships and reorganizations, or they may be offset by inadequate service or delayed maintenance."

It is to be noted that there a statute expressly authorized the O.P.A. to be heard. There is no such statute here.

But says the O.P.A., "public interest" requires a construction of the Emergency Price Control Act which would make it applicable to rentals charged while the property is vested in and under the control of this court. I cannot see that it does. The same "public interest" is the reason for permitted reorganization. Failures, foreclosures, liquidations and other economic catastrophies, with their aftermath and deflationary effects, were prominent in the mind of Congress when Chapter X was adopted (Case v. Los Angeles Lumber Co., 308 U.S. 106–124, 60 S.Ct. 1, 84 L.Ed. 110), and necessarily must have been the subject of exclusive jurisdiction so plainly worded.

■ 2. Section 111 of the Bankruptcy Act vests in this court "exclusive jurisdiction of the debtor and its property" from the date of the approval of the petition. § 114; Humphrey v. Bankers Mortgage Co., 10 Cir., 79 F.2d 345–349. The property is in the custody of the court. In re Grevling Realty Corp., 2 Cir., 74 F.2d 734, certiorari denied 294 U.S. 725, 55 S.Ct. 639, 79 L.Ed. 1256; In re Park Beach Hotel Corp., 7 Cir., 96 F.2d 886–891, certiorari denied 305 U.S. 638, 59 S.Ct. 105, 83 L.Ed. 411.

■ 3. Under section 116 of the Bankruptcy Act, this court, in addition to its other powers and jurisdiction, may permit rejection of executory contracts and authorize the trustee to sell or lease the property "upon such terms and conditions as the judge may approve." And before any plan can be presented to the persons interested it must be approved by the judge as fair, equitable and feasible. § 174; In re Freeman, supra.

■ It was said in Consolidated Rock Products Co. v. DuBois, 312 U.S. 510–525, 61 S.Ct. 675, 685, 85 L.Ed. 982, that earnings, present and prospective, are a sine qua non, "to a determination of the integrity and practicability of the new capital structure." That is particularly true here.

It cannot be that this court has power to pass upon the feasibility and merit of a plan of reorganization as to all matters except earnings, and as to that to subordi-

nate itself to the Office of Price Administration, particularly to a determination made subsequent to the time when exclusive jurisdiction had here vested a determination not made, so far appears and with reference to this property, upon consideration of whether it was fair, reasonable or comparable. I cannot believe that any such a result was intended by Congress, or was even considered by it. Nothing in the Act reveals any such intention.

If the income from this property is regulated by the rent regulations, this court is required to share the decision of whether the plan of reorganization is feasible with the O.P.A., in so far as income is concerned, and to be governed by its decision even though such decision may make impossible a successful or feasible plan.

It is not disputed that the income of the property and the leases were made before the rental area was erected or the regulations promulgated. It is undisputed that the rents charged are fair and reasonable, and in some instances below comparable and fair rentals.

Further, it is conceded that the O.P.A. has no control over the rents under the proprietary leases. Thus the situation is still more anomalous. The plan may encompass fair, equitable and feasible adjustments of the real property, the mortgage, the proprietary rents, and other creditors rights, and founder upon an income from commercial leases frozen to such an extent as to make impossible a reorganization such as Congress intended in the enactment of Chapter X. The rents, as of March 1, 1943, may have been so low as to have caused the institution of this proceeding. It is shown, without dispute, that many of the leases, effective as of that date, were made under abnormal and strained conditions in which the debtor was endeavoring to fill vacancies, or were made during this litigation, when, within a span of less than sixty days, three different agents managed the property.

The determination here made does not set aside or declare invalid the Act or any regulation, or in any way run counter to section 204(d) thereof. Like the right to challenge its constitutionality is the right to declare that the Act does not apply, and does not repeal any part of the Bankruptcy Act. Nor is it an answer that the administrative avenue for relief is open under the Act and the regulations. If they are not applicable, there is no such channel. Relief is specifically provided in Chapter X to which the debtor has resorted as of right.

The motion is granted. Settle order on notice.