## In re STABLE MEWS ASSOCIATES, Debtor.

### Bankruptcy No. 82 B 12454 (HB).

United States Bankruptcy Court, S.D. New York.

Dec. 6, 1983.

Albert Togut, New York City, Chapter 11 Trustee.

Fischbein, Olivieri, Rozenholc & Badillo, New York City, for three lessees Mr. Moller, Miss Simon and Mr. Gubina; Robert Chira, New York City, of counsel.

Heller, Peck & Levy, New York City, for Mrs. Henry J. Taylor; Edward H. Heller, New York City, of counsel.

William Sutherland, New York City, for Mrs. Henry Cobb.

Edmond C. Granger III, New York City, for Thomas S. Burns.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

This case presents the issue of whether tenants of a bankrupt landlord, upon the rejection of their unexpired leases by a trustee or debtor-in-possession, should be subject to reasonable use and occupancy charges.

The debtor, Stable Mews Associates ("Stable Mews") filed for protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. 1101 *et seq.*, (the "Code") on December 30, 1982. An operating trustee, Albert Togut, was appointed pursuant to § 1104 of the Code on June 1, 1983. Shortly thereafter, the Trustee filed a motion in this Court seeking an order enabling him to reject the unexpired leases and to compel the tenants to pay reasonable use and occupancy

charges since the filing of the petition. Various tenants have opposed the motion, claiming, *inter alia,* that they are liable only for the rent stated in their leases. They do not claim that the Trustee may not reject the leases pursuant to § 365 of the Code. Upon the consent of the parties, the Court has ordered that this matter be treated as a contested matter pursuant to Rule 9014 of the Rules of Bankruptcy Procedure and that the tenants' opposition papers be deemed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The facts alleged by the Trustee are, therefore, deemed to be true for purposes of this decision.

In seeking such relief, the Trustee alleges that the debtor owned and operated buildings located at 412–14 East 75th Street in Manhattan. In his brief, the trustee asserts that the cost of maintaining the building and supplying heat and other services to the tenants is excessive and burdensome in light of the rents received. A receiver was appointed for the buildings in furtherance of an order issued on May 14, 1982, by the Supreme Court of the State of New York. After commencement of this proceeding, the debtor entered into a written agreement to sell the buildings for an aggregate sum of $1,750,000, conditioned upon the buildings being completely vacant.

The eight tenants remaining in the building are commercial tenants. Presumably the use clauses in the respective leases restrict use of the premises to commercial use. Three of the eight tenants are holdover tenants; four tenants occupy premises in the buildings pursuant to pre-petition leases expiring during the period from December 31, 1984 through May 31, 1989; the lease of the remaining tenant, Mrs. Henry J. Taylor, expired on August 31, 1983, and she has apparently vacated her leasehold. The leases pertaining to the non-holdover tenants provide for payment of rent ranging from $3.19 to $7.22 per square foot.

In seeking an order levying reasonable use and occupancy charges against the tenants, the Trustee avers that the current market rental rate for such premises has risen to $18 to $22 per square foot. For that reason, he claims that the tenants owe substantial sums in addition to the rent paid since the petition was filed. He further claims that those tenants remaining in possession if the leases are rejected should pay rent on that basis.

The dispute here involves the five nonholdover tenants, the holdover tenants having defaulted or not being able to be served. None is alleged to have failed to pay the rent set forth in his or her lease.

**I**

Rejection of tenant's leases by a landlord as debtor-in-possession or by a trustee is a rarely litigated issue. 2 *Collier on Bankruptcy* ¶ 365.09 (15th Ed.1980). But where the rental market has witnessed the inflationary spiral reflected by the Trustee's claim for reasonable use and occupancy charges here, a trustee's general duty to maximize the return to creditors leads to the claim that tenants remaining in possession should pay current market rents rather than the rent set forth in their leases. Similarly, it may be in the best interests of the estate for a building belonging to a debtor to be vacated and sold or for the trustee to be freed of the debtor's obligations imposed by the tenant's leases.

Whether tenants may be forced to quit the premises and whether the trustee may reject burdensome lease covenants were resolved by § 70(b) of the former Bankruptcy Act, 11 U.S.C. § 110(b) (repealed). Congress there recognized the interests of the creditors and the debtor by empowering the trustee of a lessor with power to reject an "unexpired lease or any covenant therein." In so doing, however, Congress balanced that power and recognized the competing interests of the tenants. It rejected the notion that the estate should be benefitted by removal of the tenant, providing that such rejection "does not deprive the lessee of his estate." In § 365(h) of the Code, Congress reaffirmed at least the possessory attributes of a lease, *see Matter of Barnett,* 12 F.2d 73 (2d Cir.1926), *cert. denied sub*

*nom. United Cigar Stores v. Rayher,* 273 U.S. 699, 47 S.Ct. 94, 71 L.Ed. 846 (1926), and recognized the tenant's right to offset from his rent the damages caused by rejection, such as the failure to perform lease covenants.

Whether Congress, in § 70(b) of the Act, went further and intended to permit the trustee to increase the rents if the tenant remained in possession is not at all clear from a review of the extant authorities. For example, different editions of the same treatise state exactly contrary positions. In 2 *Collier on Bankruptcy* ¶ 365.09 (15th ed. 1980), the author refers to a pre-Code "general assessment that there was no power in a bankruptcy court to deprive a tenant of his estate directly or indirectly by increasing the rent," citing to Creedon and Zimmer, *Landlord's Bankruptcy: Laissez Les Lessees,* 26 Bus.Law. 1398 (1971) ("Creedon and Zimmer"). In so opining, the author claimed that *In re Freeman,* 49 F.Supp. 163 (S.D.Ga.1943), stating the contrary, was wrongly decided. In 4A *Collier on Bankruptcy* ¶ 70.44, p. 541, n. 6 (1978) it is written, however, in referring to the non-deprivation of estate proviso of § 70(b), that:

> The meaning of this provision was set forth as follows in *Matter of Freeman* [supra, citation omitted] ... the relation of landlord and tenant is not disturbed, but the contract of rental no longer binds either of them, and the trustee may charge and recover a reasonable rental for the demised premises until the end of the term.

There exists varying support for each of these diametrically opposed views. *Freeman* has been justly criticized for its ultimate holding that a tenant whose lease has been rejected continues in its leasehold estate only at sufferance as a holdover tenant subject to eviction. *See* 2 *Collier on Bankruptcy* § 365.09 (15th ed. 1980). That result is contrary to the possessory nature of an estate for a term of years, *i.e.,* a leasehold, and thus a misinterpretation of § 70(b).

But the *Freeman* court's distinction between the relationship of landlord and tenant, *i.e.,* privity of estate, and the necessary

contractual relationship also embodied in a lease, has its root in Judge Swan's opinion in *In re Wil-Low Cafeterias,* 111 F.2d 83 (2d Cir.1940) where he noted that adoption of a lease by a bankrupt tenant "creates privity of estate but no privity of contract," thereby absolving the debtor from liability for subsequent rent upon the assignment of the lease. To the *Freeman* court, and as argued by the Trustee here, the lack of privity of contract enables the trustee to charge market rent.

This line of reasoning subsequently was adopted by the Seventh Circuit in *In re Schnabel,* 612 F.2d 315 (7th Cir.1980). There, a real estate developer had leased a restaurant. The tenants failed to pay rent for nine months that they remained in possession after the developer filed and was adjudicated a bankrupt. In holding the tenants liable for fair rental value for use and occupancy of the premises since the filing of the petition, the Court ruled that the trustee had rejected the lease by not assuming it within 60 days as provided in former Rule 607 of the Rules of Bankruptcy Procedure and followed the reasoning expressed in 4A *Collier on Bankruptcy* ¶ 70.44 at 541 n. 6, observing:

> We find Collier's view very logical and we adopt it here. Regardless of whether the trustee assumes or rejects the lease, he has title to the underlying premises... Rejection merely frees the estate and underlying premises from the lease obligation so that the trustee may operate the premises as profitably as possible for benefit of the estate.

612 F.2d at 317. The court carried this reasoning further than required, however, in stating, *in dicta,* that the trustee could sell the premises free of the lease, ignoring the possessory characteristics of an estate for a term of years.

Support for the contrary position that the rent due a trustee or debtor as landlord continued unmodified lay, as noted by Creedon and Zimmer, *supra,* p. 1409, in the seeming acceptance of that proposition by cases in this circuit holding that a tenant's renewal rights are part of the tenant's es-

tate under § 70(b) of the Act and therefore are enforceable after rejection of the lease. In *In re New York Investors Mutual Group, Inc.,* 153 F.Supp. 772 (S.D.N.Y.1957), *aff'd sub nom Cohen v. East Netherland Holding Co.,* 258 F.2d 14 (2d Cir.1958), the lease contained a clause affording the landlord with the choice of granting a 21 year renewal of the lease or paying the lessee the value of the building. Upon the rejection of the lease by the trustee for the bankrupt building owner, the tenant claimed a lien on the building with a right of possession until paid. Focusing on the deprivation of "estate" language of § 70(b), Judge Edward Weinfeld held that to construe the term to include only the possessory term of the lease and not to include the economic provisions of the contract "denudes the lease of the clear purpose intended by the parties and deprives the tenant of the full enjoyment of his estate." 153 F.Supp. at 775; *cf. American Brake Shoe & Foundry Co. v. New York Rys.,* 278 F. 842 (S.D.N.Y.1922).

This result was adumbrated by *Vass v. Conron Bros. Co.,* 59 F.2d 969 (2d Cir.1932), where Judge Learned Hand, writing for the court, apparently assumed that a receivership estate includes the right to remain in possession for the reserved rent. There, a debtor had leased out part of its cold storage plant. When the receiver took over the plant, Judge Hand asserted that:

[The receiver] found a lessee in possession of a part of them, from which he could not eject it. His alternatives were to accept the reversion, *cum onere,* as he did, making himself liable on the covenants; or to reject it, leaving the bankrupts reversioners *pro tanto,* and owners of a most inconvenient interest in a building otherwise his own.

59 F.2d at 971. In short, Judge Hand gave the receiver two choices: he could abandon the property or accept the lease as made. Both are contrary to the notion that the receiver could require the tenant to pay a higher rent consisting of reasonable charges for use and occupancy.

## II

It is upon the background of this dichotomy that Congress acted in crafting the provisions of § 365(h) of the Code. That section affords the tenant under a lease rejected by the trustee for the landlord with the option of treating the lease as terminated or remaining in possession for the balance of the term plus the term of any enforceable renewal or extension provisions of the lease. It further provides, *inter alia,* that a lessee who remains in possession "may offset from the rent reserved in the lease," any damages caused by the debtor's non-performance of executory covenants upon rejection of the lease.[1]

■ The plain meaning of statutory language controls its interpretation. *E.g., Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976). Here the language quoted above requires no exploration of the common law or of previous interpretations of a word or phrase employed by Congress. *Compare Ernst & Ernst, supra,* 425 U.S. at 197, 96 S.Ct. at 1382; *In re Saypol,* 31 B.R. 796 (Bkrtcy.S.D.N.Y.1983). That language plainly indicates that a tenant remaining in possession is to pay the rent reserved in the lease less damages caused by the rejection.

---

1. Section 365(h) provides in full:

(1) If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor, the lessee under such lease may treat the lease as terminated by such rejection, or, in the alternative, may remain in possession for the balance of the term of such lease and any renewal or extension of such term that is enforceable by such lessee under applicable nonbankruptcy law.

(2) If such lessee remains in possession, such lessee may offset against the rent reserved under such lease for the balance of the term after the date of the rejection of such lease and any such renewal or extension, any damages occurring after such date caused by the non-performance of any obligation of the debtor against such date, but such lessee does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset.

But it is argued that such a straight-forward analysis does not go far enough. Notably absent from § 365(h) is the estate concept embodied in § 70(b) from which sprang the notion that the tenant is to have the full benefit of his estate, apparently including the rent bargained for. To this it is added that Congress in providing an offset up to the rent reserved in the lease sought merely to protect the estate by providing a cap for such damages and intended no implication that bankrupts' estates or debtors-in-possession are to be burdened by leases enabling the tenants to pay less than current market rent. The Trustee here adds that since *In re Schnabel* was decided shortly after adoption of the Code, the Seventh Circuit in that case under the Bankruptcy Act should be presumed to be familiar with the intent of § 365(h) and to have reached a result consistent with that section.

Such arguments, notwithstanding their being partially rooted in the interpretative history of § 70(b), ultimately run afoul of that history and the attempt by Congress to address it. Although the extremely sparse legislative history concerning § 365(h) sheds no light on this issue, examination of the words employed by Congress in § 365(h) indicates that Congress was aware of the § 70(b) cases noted above and resolved the debate.

█ In empowering the tenant with the option of remaining in possession, Congress must be seen as having expressly rejected the holding of *Freeman, supra*. Similarly, the *Schnabel* court's *dicta* that a trustee can sell a building free and clear of the lease is inconsistent with that option. Thus, it cannot be said that the *Schnabel* court attempted to structure its decision in accord with the Code. Moreover, Congress, in providing that the tenant can remain in possession for the term of a valid renewal or extension period provided in the lease, adopted the express holding in *In re New York Investors Group, Inc., supra*. Consistent with its rejection of *Freeman* and its codification of *New York Investors,* is the conclusion that Congress intended that the

rent after rejection remain the rent stated in the lease. *See* Creedon and Zimmer, *supra.*

That conclusion is buttressed by two further observations gleaned from the statutory language. First, since Congress has decided that tenants should have the option to remain in possession, it would make little sense to interpret the statute to defeat that option indirectly through raising the rent by the magnitude proposed by the Trustee here. Second, the provision for an offset against the rent reserved in the lease would be duplicative of the ultimate clause of § 365(h)(2) were that provision to be viewed as merely providing a cap on damages chargeable to the estate from rejection of a lease. The ultimate clause itself provides such a cap. It shows that where Congress desired to express such a concept, it was able to employ words sufficient to convey its desires.

In so crafting the statute and balancing the interests of debtors and tenants, Congress implicitly answered the seeming contradiction posed by the Trustee on this motion. Briefly, he notes that, upon being empowered to reject the leases in his business judgment, *Control Data Corp. v. Zelman,* 602 F.2d 38 (2d Cir.1979), or because they are burdensome, *Dushane v. Beall,* 161 U.S. 513, 519, 16 S.Ct. 637, 640, 40 L.Ed. 791 (1896), the Trustee will not be obligated to furnish services to the tenants electing to remain in possession. *See* § 365(h)(2). He then theorizes that the tenants will damage the building in their attempts to provide heat. To prevent further damage, the Trustee may have to service the building in order to preserve the property of the estate. From this, he reasons that the tenants will not be damaged and that, therefore, § 365(h) is inapplicable.

This chain of reasoning goes too far. Nowhere does Congress exempt the tenants remaining in possession from liability for the damage they may cause. Unlike the limit on damages recoverable against the trustee, the Code places no cap on the damages recoverable against the tenants. If the tenants' negligence causes the trustee

**608**

to resume servicing the building, nothing in the Code prevents that cost from being passed on to them, at least pro-rata. Should the Trustee's fears come to pass, Congress has placed no constraint on this Court's power to address the equities of the situation as it then presents itself.

The meaning of § 365(h) is plain enough. It controls. To be sure, it would increase the return to creditors were a trustee, on rejection, able to raise the rents payable by its tenants in times where the rental market has increased dramatically as is apparently the case here. But § 365(h) is intended for all seasons. Where the market has decreased, the trustee will likely choose not to reject leases and the tenants may owe a higher rent than they might find elsewhere.

The portion of the Trustee's motion that seeks to charge the non-holdover tenants for reasonable use and occupancy charges should be dismissed.[2]

Settle order on five days notice.

2. The tenants also claim that certain state housing statutes prevent the Trustee from raising the rent. In view of the above analysis, this issue is not addressed.