73992. PUETT v. McCANNON et al.

(358 SE2d 300)

McMURRAY, Presiding Judge.

Tricia McCannon and David Dobbs (plaintiffs) filed this action against Thomas I. Puett, d/b/a Mews Development Company (defendant) seeking a declaration of their rights as tenants under a lease agreement on real property owned by defendant. Defendant answered, denying the material allegations of the complaint and counterclaimed seeking a declaration of his rights as landlord under the lease agreement. The defendant filed a motion for summary judgment and plaintiffs filed their motion for partial summary judgment. Upon consideration thereof, the trial court entered the following order:

"The facts of this matter are basically undisputed. On April 18, 1983, Plaintiffs leased the premises located at 1536 Monroe Drive, Atlanta, Fulton County, Georgia, (the Premises) from H. F. Woodall, Jr. (Woodall) for a term of 5 years, with an option to extend the lease for an additional 2 years. Said lease provided in part that the landlord would pay for all utilities and that the landlord would be responsible for the upkeep, maintenance and repair of the building exterior, grounds and common areas of the Premises. On May 3, 1983, Woodall filed a petition seeking relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia. On July 25, 1984, the Bankruptcy Court entered an Order authorizing sale of the Premises free and clear of all liens and encumbrances on the Premises. Woodall filed a Motion for Authority to Reject the lease which was granted on September 11, 1984. Thereafter, Woodall rejected the lease. Plaintiffs elected to remain on the Premises for the remainder of their lease and to exercise their option to extend the lease for 2 years. Woodall then sold the Premises to Defendant Mews Development Corporation. On January 31, 1985, the Defendant notified the Plaintiffs that it would cease providing utilities or repairs of any kind to the Premises.

"The parties agree that, pursuant to the Order of Bankruptcy and the provisions of 11 U.S.C. § 365 (h), the Defendant has no obligation to provide services as required by the lease; however, the Plaintiff[s] [are] entitled to deduct from the rent due any and all

damages incurred as a result of Defendant's failure to provide such services.

"Defendant has agreed to allow Plaintiffs to alter the Premises for the purpose of enabling Plaintiffs to provide separately metered utilities. However, Defendant contends that Plaintiffs cannot deduct from the rent the costs of providing independent utilities. Further, Defendant has required Plaintiffs to use an architect and a bonded contractor in making provisions for independent utilities."

From these facts, the trial court entered partial summary judgment in favor of plaintiffs holding that "Defendants shall allow the Plaintiffs to occupy the Premises and to set-off against the rent the cost of utilities, repairs and any other damages caused by the Defendant's nonperformance of the lease covenants." The trial court further held that "the landlord having elected not to provide utilities, the tenants are required to provide the utilities to themselves in the manner they [choose]." Defendant now appeals. *Held*:

1. The pivitol issue raised in defendant's first, second and seventh enumerations of error is whether the trial court erred when it declared that defendant "shall allow the Plaintiffs to occupy the Premises and to set off against the rent the cost of utilities, repairs and any other damages caused by Defendant's nonperformance of the lease covenants."

The trial court expressly based its holding upon plaintiffs' rights as defined by 11 USCA § 365. This part of the Bankruptcy Act provides debtor-landlords the option of assuming or rejecting executory contracts and unexpired lease agreements. 11 USCA § 365 (a). See 2 Collier on Bankruptcy, ¶ 365.03 (15th ed. 1979). In the event the debtor-landlords elect to reject their unexpired lease agreements, their tenants may choose to remain in the leased premises. 11 USCA § 365 (h) (1) provides in pertinent part as follows: "If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is lessor, . . . the lessee . . . under such lease . . . may treat such lease . . . as terminated by such rejection, where the disaffirmance by the trustee amounts to such a breach as would entitle the lessee . . . to treat such lease . . . as terminated by virtue of its own terms, applicable nonbankruptcy law, or other agreements the lessee . . . has made with other parties; or, in the alternative, the lessee . . . may remain in possession of the leasehold . . . under any lease . . . the term of which has commenced for the balance of such term and for any renewal of extension of such term that is enforceable by such lessee . . . under applicable nonbankruptcy law."

If the tenant elects to remain in the leased premises, their rights will be modified pursuant to 11 USCA § 365 (h) (2). This subsection provides in pertinent part as follows: "If such lessee . . . remains in possession as provided in paragraph (1) of this subsection, such lessee

. . . may offset against the rent reserved under such lease . . . for the balance of the term after the date of rejection of such lease . . . and any such renewal or extension thereof, any damages occurring after such date caused by the nonperformance of any obligation of the debtor under such lease . . . after such date, but such lessee . . . does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset."

The primary goal of the above provisions of the Bankruptcy Code is to relieve bankrupt landlords of the burden of performing affirmative acts under duress and to preserve the bankrupt landlord's estate. See 2 Collier on Bankruptcy ¶ 365.01 (15th ed., 1979). However, by allowing tenants to remain in possession of the leased premises, perform affirmative acts no longer executed by bankrupt landlords and deduct the resulting additional costs from their prospective rental payments, a balance is offered to offset the economic hardships often cast upon innocent tenants by such modifications. See *In re Stable Mews Assoc.*, 35 B.R. 603, 606-607 (Bkrtcy. 1983). From this perspective, it appears the only issue remaining for resolution in this division of the case sub judice is whether plaintiffs' costs of providing separately metered utilities on the leased premises are damages of the nature contemplated by 11 USCA § 365 (h) (2).

Rejection of an executory contract under § 365 of the Bankruptcy Code constitutes a breach and the injured party is entitled to assert a claim based thereon. *In re Murphy v. C & W Ltd. Corp.*, 694 F2d 172, 174-175 (8th Cir. 1982); *In re Midwest Polychem*, 61 B.R. 559, 563 (Bkrtcy. N.D. Illinois 1986). "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2. See *Simmons v. Boros*, 176 Ga. App. 346, 347 (1) (335 SE2d 662). Applying this principle in the case sub judice, we find the cost of providing separately metered utilities to the leased premises was within the contemplation of the parties at the time the lease contract was made. Consequently, the trial court did not err in granting summary judgment in favor of plaintiffs in this regard. Plaintiffs may offset from rent the cost of providing separately metered utilities to the leased premises.

2. In his third and fourth enumerations of error defendant contends plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel. Defendant argues that the bankruptcy court's order, allowing Woodall to reject the lease agreement he entered into with plaintiffs, foreclosed judicial dispute resolution concerning plaintiffs' options resulting from rejection of said lease agreement.

Under a plea of res judicata "a former adjudication is a bar as to all matters placed in issue or which might have been placed in issue

between the same parties, or their privies, *upon the same cause of action.*" (Emphasis supplied.) *Smith v. Wood,* 115 Ga. App. 265, 266 (1) (154 SE2d 646). Under a plea of collateral estoppel "the former adjudication is a bar if the *same issues* were litigated by the parties or their privies in the previous action, though it is not essential that it be upon the same cause of action. [Cits.]" *Smith v. Wood,* 115 Ga. App. 265, 266 (1), supra.

The controversy in the case sub judice arose from an action wherein plaintiffs were primarily seeking a declaration of their rights under 11 USCA § 365 (h). The former adjudication in the bankruptcy court was based on Woodall's motion to reject the lease agreement he entered into with plaintiffs. In his motion, Woodall did not request a declaration of rights resulting from rejection of said lease agreement and it appears the bankruptcy court did not address this issue when it ruled on the propriety of rejecting the lease agreement. Further, there is no indication that the issue of plaintiffs' rights under 11 USCA § 365 (h) (2) was disputed at the time the bankruptcy court entered its order authorizing rejection of the lease agreement. (This conclusion is supported by the fact that plaintiffs did not oppose Woodall's motion to reject the lease agreement.) The conflict now begging resolution did not arise until after the bankruptcy court entered its order authorizing rejection of the lease agreement and after defendant purchased the leased premises.

"[A] former judgment binds only as to the facts in issue and events existing at the time of such judgment, and does not prevent a re-examination even of the same questions between the same parties, if in the interval the material facts have so changed or such new events have occurred as to alter the legal rights or relations of the litigants . . ." *Durham v. Crawford,* 196 Ga. 381, 386 (4), 387 (26 SE2d 778).

In the case sub judice, since there is nothing in the record indicating a former adjudication based upon the "same cause of action" and since the issues before the trial court were not resolved or were not ripe for resolution at the time the bankruptcy court entered its order authorizing rejection of the lease agreements, the trial court did not err in failing to dismiss plaintiffs' complaint based on the doctrines of res judicata or collateral estoppel. See *Firestone Tire &c. Co. v. Pinyan,* 155 Ga. App. 343, 344 (2), 345 (270 SE2d 883).

3. Defendant contends in his fifth enumeration of error that the trial court "erred in failing to find that [plaintiffs'] lawsuit constitutes an impermissible collateral attack upon the judgment of the Bankruptcy Court."

A collateral attack upon a prior judgment has been characterized as "an attempt to avoid, defeat or evade a judicial decree, or deny its force and effect, in some incidental proceeding not provided by law

for the express purpose of attacking [the prior judgment]." 1B Moore's Fed. Practice ¶ 0.407, at 286 (2d ed. 1948).

In the case sub judice, the trial court's order allowing plaintiffs to offset from rent damages sustained by plaintiffs as a result of rejection of the lease agreement in no way contravenes the bankruptcy court's order allowing Woodall to reject the lease agreement. On the contrary, since Woodall elected to avoid performing the affirmative covenants required of him under the executory lease agreement, the trial court's order clarifies and reinforces those rights declared by the bankruptcy court and afforded to plaintiffs by 11 USCA § 365 (h) (2). This enumeration of error is without merit.

4. Next, defendant contends in his sixth enumeration of error that the trial "court erred in failing to find that [plaintiffs] must conduct their construction on the Premises subject to the reasonable conditions of [defendant], including the providing of a performance bond, and the use of licensed, bonded architects and engineers." Defendant argues that these conditions must be placed on plaintiffs in order "to protect other tenants from damage" and to preserve the leased premises. We do not agree.

Defendant cites no authority in support of his contention and we find nothing in § 365 of the Bankruptcy Code which requires tenants to obey demands of bankrupt landlords or their successors in title when the tenants are providing themselves affirmative relief for those covenants no longer provided by their landlords as a result of rejection of their lease agreements. Further, defendant's argument concerning preservation of the leased premises "goes too far. Nowhere does Congress exempt the tenants remaining in possession from liability for the damage they may cause. Unlike the limit on damages recoverable against the trustee, the [Bankruptcy] Code places no cap on the damages recoverable against the tenants. If the tenant's negligence causes the trustee to resume servicing, [the leased premises], nothing in the [Bankruptcy] Code prevents that cost from being passed on to [the tenants]." *In re Stable Mews Assoc.*, 35 B. R. 603, 607-608, supra.

Accordingly, in the case sub judice, defendant may not direct plaintiffs in performing the affirmative acts which are reasonably required as a result of Woodall's rejection of the lease agreement. The trial court did not err in failing to order plaintiffs to obey defendant's demands with regard to installation of the separately metered utilities.

5. Other issues raised in defendant's argument relate to matters which remain in the trial court and are not before this court for resolution.

*Judgment affirmed. Sognier and Beasley, JJ., concur.*

DECIDED JUNE 1, 1987.

*Robert H. Hishon*, for appellant.
*Russell S. Thomas*, for appellees.